An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-868

Filed 15 July 2026

Mecklenburg County, No. 21CVD009784-590

KELLY MADELEINE CARROLL-JORDAN, Plaintiff,

v.

DONALD REID JORDAN, JR., Defendant.

Appeal by Defendant from order entered 14 May 2025 by Judge Karen D. McCallum in Mecklenburg County District Court. Heard in the Court of Appeals 26 March 2026.

*Touchstone Family Law, by Brione B. Pattison, for Plaintiff–Appellee.*

*McKeny Law Firm, by William T. McKeny, for Defendant–Appellant.*

MURRY, Judge.

Donald R. Jordan, Jr. (Defendant) appeals from the trial court's order for permanent child support, equitable distribution, alimony, and attorneys' fees. For the reasons below, this Court affirms the order and remands it to the trial court solely for further findings of fact explaining the duration and method of payment of its alimony award.

## I.    Background

Kelly M. Carroll-Jordan (Plaintiff) and Defendant married in 2004 and had three children together before separating in 2021. On 18 June 2021, Plaintiff filed a verified complaint for divorce from bed and board, followed three days later by a complaint for child custody, child support, postseparation support, alimony, equitable distribution, and attorneys' fees. On 1 November 2021, Defendant filed an answer and counterclaims for child custody, equitable distribution, and attorneys' fees. On 7 June 2022, Plaintiff filed a motion for interim distribution, alleging that Defendant failed to reimburse her in part for insurance-claim proceeds he received in response to a claim the parties filed for flooding damages to their marital home. One week later, Defendant moved to strike Plaintiff's motion, alleging that he had already partially reimbursed her for $30,000 and that she could not prove her entitlement to the additional $25,000 she alleged to be due.[1]

The matter came on for an alimony and child-support hearing on 12 October 2023. At the hearing, Defendant testified to owning and operating his own plumbing company, where he paid one employee in cash on an "as-needed" basis for $160 per day. Although he testified to receiving a monthly paycheck of "about" $5,000 from his business, Defendant claimed to be unsure of the amount and frequency of shareholder distributions he would routinely take because "[i]t kind of depends on how the bills

---

[1] The record on appeal does not include any order of the trial court disposing of Plaintiff's motion for interim distribution or Defendant's motion to strike.

get [him]." In response to questioning about specific business expenses and his salary, Defendant responded, "I just don't keep up with it. I honestly don't know, that's why I pay these other people to do it." Defendant testified to paying Plaintiff $5,000 in monthly support from their separation until June 2023, deducting from that amount mortgage payments on the marital home and car payments on Plaintiff's vehicle. He also testified to reimbursing Plaintiff approximately $30,000 of an insurance claim payment for "extensive remodeling" to the marital home and to using about $20,000 from the same claim on his own living expenses.

Plaintiff testified to employment outside the home with a high-school education prior to the parties' marriage and to "helping [Defendant] run his company" part-time during the marriage, which included doing "all the bidding for . . . new construction," "answer[ing] the telephones," and financial record-keeping for the business. She further testified to her unemployment since the parties' separation, claiming that her "day has been revolving around taking the kids to school and picking them up." She claimed, "There's nobody that wants to hire me and give me the hours that I need so I [can] continue to be a mother to my kids." Plaintiff also testified that Defendant's support payments are "not paying the bills and getting us through," leaving her to resort to assistance from a crisis ministry organization for months at a time to pay for the water bill and the children's school supplies. Both parties submitted written closing arguments following the hearing.

On 14 May 2025, the trial court issued an order for permanent child support,

equitable distribution, alimony, and attorneys' fees. The trial court found the "most credible evidence of current income" for Defendant to be his 2023 balance sheet and calculated his income by dividing and averaging the cumulative distributions from the balance sheet over a ten-year period. The trial court also issued Defendant a child-support credit of $115,202.85 for past payments, corresponding to his alleged amount of overpayment in his closing argument, and ordered him to pay Plaintiff outstanding child-support arrearages of $110,370.15 and ongoing arrearages of $2,349 per month. Finding Plaintiff's entitlement to alimony and a shortfall of $3,198 in her monthly income, the trial court awarded her monthly alimony in that amount for a period of 102 months to be paid directly to her by Defendant. The trial court found Plaintiff's capability of "minimum[-]wage employment, which includes office work, on a part-time basis" and imputed part-time, minimum-wage income to her.

In light of the parties' waiver of the listing and valuation of their property for equitable distribution, the trial court found "an unequal division of marital and divisible property" to be "fair and equitable." The trial court ordered the distribution of the former marital home, valued at $331,851, to Plaintiff and "all assets, debts, and other holdings" held in the name of Defendant's plumbing company, valued at approximately $426,000, to Defendant. The trial court also ordered Defendant to pay Plaintiff a distributive award of $145,000. Finally, the trial court found that Plaintiff was "an interested party, acting in good[ ] faith with insufficient means to defray the expense of this action" and awarded her $15,000 in "reasonable" attorneys' fees,

ordering Defendant to pay the award in a "lump sum" directly to Plaintiff's attorney. Defendant timely appealed.

## II.    Jurisdiction

This Court has jurisdiction to hear Defendant's appeal of the trial court's order because it is the "final judgment of a district court in a civil action." N.C.G.S. § 7A-27(b)(2) (2025).

## III.    Analysis

On appeal, Defendant argues that the trial court erred by (1) miscalculating the amounts of his child-support arrears and credits; (2) failing to make required findings of fact and miscalculating his income, Plaintiff's reasonable needs, and Plaintiff's earning capacity in determining alimony; (3) failing to make necessary findings of fact and to consider his business debts in making its equitable-distribution award; and (4) awarding attorneys' fees to Plaintiff in a lump sum instead of separate amounts for each "component" of the case.

We review a trial court's determinations of alimony, child support, and equitable distribution for abuse of discretion, *see Wise v. Wise*, 264 N.C. App. 735, 738 (2019), and overturn its decision "only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision," *White v. White*, 312 N.C. 770, 777 (1985). We review *de novo* a trial court's determination of a party's entitlement to attorneys' fees under N.C.G.S. § 50-13.6 but "review the amount of the fees for abuse of discretion" only. *Hill v. Hill*, 261 N.C. App. 600, 627 (2018). For the reasons

below, we affirm the trial court's order and remand it solely for further factfinding on the reasons for the duration and method of payment of the trial court's alimony award.

## A. Child Support

On appeal, Defendant contends that the trial court erred by miscalculating his child-support arrears and credits for past payments. He argues that "the trial court abused its discretion by imputing income" to him "by using distributions over an approximate ten-year period," "failed to consider the overpayment for the eldest child," and "improperly calculated the credits" for Defendant's payments to Plaintiff "during the course of . . . litigation." We disagree.

When determining a child-support award, the trial court typically determines the supporting spouse's ability to pay "by his income at the time the award is made" but may do so based on his "[c]apacity to earn" instead upon finding that he "is deliberately depressing his income . . . because of a disregard of his marital obligation to provide reasonable support." *Beall v. Beall*, 290 N.C. 669, 674 (1976). The trial court may also "average prior years' income in cases where" it finds "the evidence of actual income . . . unreliable or otherwise insufficient." *Wise*, 264 N.C. App. at 745.

Here, Defendant mischaracterizes the trial court's determination of his income as the product of *imputing* rather than *averaging* his income over a period of time. The trial court found that Defendant "receives inconsistent income across different sources" and that he "took distributions" from his business "as needed, or

approximately one to two distributions per month," along with end-of-year net-profit distributions. Based on these unchallenged findings, the trial court divided the cumulative distributions from Defendant's 2023 balance sheet to find his average monthly income, finding it to be the "most credible evidence of current income." Given the fluctuations in Defendant's income and his imprecise testimony regarding distributions, the trial court thoughtfully and reasonably exercised its discretion by averaging his prior income over a ten-year period to determine his monthly income. *See id.* at 747 (affording trial court "discretion in selecting the number of prior years' income it considers").

As to the amount of child-support arrears and credits, the trial court issued Defendant a credit of $115,202.85 for payments made since the parties' date of separation, ordered him to pay Plaintiff outstanding arrearages of $110,370.15, and set the amount of ongoing arrearages at $2,349 per month since September 2024. The credit amount of $115,202.85 is identical to the amount Defendant claims in his written closing argument to constitute his support payments "above and beyond the agreed amount." Because Defendant cannot now disclaim the credit amount he previously accepted, we dismiss his claims of improper calculation of credits and of any purported "overpayment" of child support. Thus, we affirm the portion of the trial court's order addressing child-support arrears and credits for past payments.

## B. Alimony

Defendant argues that the trial court erred in determining alimony by failing

to make required findings of fact under N.C.G.S. § 50-16.3A(c)[2] regarding the reasons for the amount, duration, and manner of payment of alimony. He further claims that the trial court failed to include payments to his employee when calculating his business income, miscalculated Plaintiff's reasonable needs, and improperly imputed minimum wage to Plaintiff on a part-time instead of full-time basis when determining her earning capacity.

A trial court must "exercise its discretion in determining the amount, duration, and manner of payment of alimony" and "consider all relevant factors" enumerated in the relevant statute. N.C.G.S. § 50-16.3A(a). In doing so, the trial court must "set forth the reasons for its award or denial of alimony and, if making an award, the reasons for its amount, duration, and manner of payment." *Id.* § 50-16.3A(c). We have held that "the findings of fact required to support the amount, duration, and manner of payment of an alimony award are sufficient" if the trial court makes "findings of fact . . . on the ultimate facts at issue in the case" that "show the trial court properly applied the law." *Friend-Novorska v. Novorska*, 143 N.C. App. 387, 395 (2001).

In *Williamson v. Williamson*, 140 N.C. App. 362, 365 (2000), we held that the trial court lacked sufficient findings of fact under N.C.G.S. § 50-16.3A(c) to support its alimony award when it "failed to provide any reasoning" for the monthly amount

---

[2]    Defendant incorrectly cites to "N.C.[G.S.] § 50-16A(c) (2017)" to support his argument. Our review of Defendant's argument under the correct statute does not negate our admonishment to him for this oversight.

awarded, the permanent duration of the award, or the method of payment directly into the clerk's office. Similarly, the trial court here did not document any reasons for the duration and method of payment of its alimony award. Finding that Plaintiff had a "monthly shortfall of $3,198" "[a]fter taking into consideration [her] reasonable shared . . . and individual monthly expenses," the trial court awarded her a monthly alimony amount of $3,198 for a period of 102 months to be paid directly to her. But the trial court did not specify the reasons for the duration and method of payment of the alimony award. We apply *Williamson* to this case and remand the alimony portion of the trial court's order for further findings of fact explaining its reasoning for the duration of the alimony award and its method of payment. *See In re Civil Penalty*, 324 N.C. 373, 384 (1989).

As to the calculation of Defendant's business income, the trial court found that Defendant's business "has one employee that serves as needed, who receives $160[ ] in cash per day from a business account." This finding demonstrates the trial court's consideration of payments to Defendant's employee when calculating his business income.

Regarding Plaintiff's reasonable needs, Defendant claims that the trial court "abused its discretion . . . by failing to consider" Defendant's $30,000 payment to Plaintiff "for her reasonable needs" and his $250 monthly payment for her vehicle in making its alimony award. Defendant's sole legal authority cited for this argument is an unpublished opinion of this Court, *Webb v. Webb*, No. COA09-1203, 2010 N.C.

App. LEXIS 1968 (Oct. 19, 2010). An unpublished opinion "establishe[s] no precedent and is not binding authority." *U.S. Auto. Ass'n v. Simpson*, 126 N.C. App. 393, 396 (1997); *see* N.C. R. App. P. 30(e)(3). Our appellate rules "disfavor[ ]" citation to unpublished opinions and require a party who nonetheless chooses to cite an unpublished opinion to "serve[ ] a copy thereof on all other parties in the case and on the court" and to "indicate the opinion's unpublished status." N.C. R. App. P. 30(e)(3). Defendant has failed to comply with these requirements. We thus disregard any reference to this unpublished opinion in our review and remind Defendant and his counsel of the explicit provisions of our appellate rule prohibiting citation of unpublished opinions as precedential.

Here, the trial court incorporated into its findings the parties' stipulations following mediation, which require in relevant part for Defendant to "pay to Plaintiff the sum of $30,000[ ] . . . represent[ing] the remaining portion of the insurance check necessary for [her] to complete the remaining repairs on the former marital residence." At trial, Defendant testified to remitting Plaintiff a homeowner's insurance claim payment of approximately $30,000 for "extensive remodeling" to the marital home due to flood damage and to using about $20,000 from the same claim on his own living expenses. The trial court also found that Defendant "has made payments toward . . . [Plaintiff's] car payment" "[s]ince the parties' date of separation" and credited him "for the aforementioned payment[ ]." Thus, the evidence and unchallenged findings reflect the trial court's consideration of Defendant's $30,000

payment to Plaintiff and Defendant's payments on Plaintiff's vehicle in determining the alimony award. Accordingly, we hold that the trial court did not err in determining the amount of alimony.

Additionally, Defendant argues that the trial court's imputation of minimum-wage income to Plaintiff on a part-time basis was an "arbitrary" decision unsupported by the evidence. At trial, Plaintiff testified to having a high-school diploma, working outside the home prior to the parties' marriage, and "helping [Defendant] run his company" part-time during the marriage, doing "all the bidding for . . . new construction," "answer[ing] the telephones," and keeping company financial records. The trial court found that Plaintiff "has demonstrated that [she] can at least work minimum[-]wage employment, which includes office work, on a part-time basis" and imputed income to her "at a part-time, minimum[-]wage rate of $7.25 per hour for twenty . . . hours per week." The trial court's finding of Plaintiff's earning capacity demonstrates a reasoned consideration of the evidence before it. Thus, we affirm the trial court's alimony award of $3,198 per month to Plaintiff and remand only for further factfinding explaining the duration and method of payment of alimony as discussed above.

## C. Equitable Distribution

Next, Defendant argues that the trial court erred in its equitable-distribution award by failing to (1) find that equitable distribution would be impractical; (2) list, classify, and value the parties' separate and divisible property; and (3) consider his

company's business debt in ordering a distributive award to Plaintiff. We disagree on all counts.

A trial court must "provide for an equitable distribution of the marital property and divisible property between the parties," which must consist of "an equal division by using net value of marital property and . . . divisible property unless the [trial] court determines that an equal division is not equitable." N.C.G.S. § 50-20(a), (c). This "presumption . . . that an equal division is equitable . . . may be rebutted by . . . evidence that the property is a closely held business entity," in which case the trial court must "provide for a distributive award in order to achieve equity between the parties" "in lieu of in-kind distribution." *Id.* § 50-20(e).

Here, the trial court found that the parties "waive[d] the listing, classification, and valuation of the marital and divisible property subject to distribution." Defendant challenges this finding on appeal, asserting that "he did not . . . waive" "findings of fact and conclusions of law" regarding equitable distribution and that he "objected to the entry of that language" in the order "when sending requests to the trial court for changes in the order." Defendant also contends that the trial court "failed to require equitable distribution affidavits" or include the same "within the court file" in violation of N.C.G.S. § 50-21(a).

A party who files an equitable-distribution claim must "prepare and serve upon the opposing party an equitable distribution inventory affidavit" listing and valuing all marital and separate property, to which the other party must respond with a

corresponding affidavit. N.C.G.S. § 50-21(a). Here, the record contains no such affidavit from either party, nor any objection by Defendant to the trial court's finding of the parties' stipulation to waiving the listing and valuation of their property. We base our review "solely upon the record on appeal." N.C. R. App. P. 9(a). Absent contrary evidence, we regard a "stipulation, once made and of record," as "binding on the parties" and "treat the facts stipulated to . . . as established." *Lawing v. Lawing*, 81 N.C. App. 159, 166 (1986). Accordingly, we regard the trial court's finding of the parties' stipulation as a waiver of the listing and valuation of their marital and separate property for equitable distribution. *See id.* at 162 ("presum[ing] that the trial court acted correctly" "[u]ntil shown otherwise").

Upon review, we discern no basis to conclude that the trial court abused its discretion in making its equitable-distribution determination or distributive award. The trial court found "an unequal division of marital and divisible property" between the parties to be "fair and equitable." The trial court ordered the distribution of the former marital home (valued at $331,851) to Plaintiff and "all assets, debts, and other holdings" held in the name of Defendant's plumbing company (valued at approximately $426,000) to Defendant. In light of this difference in value, the trial court ordered Defendant to pay Plaintiff a distributive award of $145,000. The trial court also found Defendant to be a "self-employed commercial plumber" and the "sole owner" of his business, who "took distributions . . . as needed" and paid "various personal expenses" through the business. Finally, the trial court found that

Defendant's "business debts . . . are encompassed in the business valuation and expenses, and should not be considered separately from the business."

These unchallenged findings reflect the trial court's deliberate and reasoned consideration of Defendant's business income and debt in determining an equitable distribution of the parties' property. Based on its findings establishing the closely-held nature of Defendant's business, the trial court's distributive award to Plaintiff appropriately seeks to achieve equity between the parties "in lieu of an in-kind distribution." N.C.G.S. § 50-20(e). Thus, we dismiss Defendant's arguments on this ground and affirm the portion of the trial court's order addressing equitable distribution and the distributive award.

### D. Attorneys' Fees

Finally, Defendant argues that the trial court erred by "awarding attorney[s'] fees in a lump sum without separating the amount of fees awarded for each component of the case." In a child-custody or support case, the trial court "may in its discretion order payment of reasonable attorney[s'] fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit." N.C.G.S. § 50-13.6. We have interpreted this provision to require findings that "the party seeking attorney[s'] fees . . . is an interested party acting in good faith" who has "insufficient means to defray the expenses." *Leary v. Leary*, 152 N.C. App. 438, 443 (2002). In a child-support action, "there must be an additional finding that the party ordered to furnish support has refused to provide support which is adequate under

the circumstances existing at the time of the institution or proceeding." *Id.* (quotation omitted); *see* N.C.G.S. § 50-13.6.

Here, the trial court found Plaintiff to be "an interested party[ ] acting in good[ ] faith with insufficient means to defray the expense of this action." The trial court also found that Defendant "has refused to provide child support . . . adequate under the circumstances existing at the time of the commencement of this action." Finding that Plaintiff had incurred $15,000 in attorneys' fees, that her attorneys' hourly rate of $400 was "commensurate with other attorneys . . . with the same skill[-]level and experience, and that the time spent was "fair and reasonable," the trial court awarded Plaintiff attorneys' fees of $15,000. The trial court ordered Defendant to "pay[ ] a lump sum" for the full amount directly to Plaintiff's attorney.

Defendant cites our decision in *Hill v. Hill* as supporting remand "when a single lump award for multiple claims makes a proper review of reasonableness too difficult." There, we vacated an award of attorneys' fees because the trial court "awarded fees without specifying the basis" and failed to find whether the defendant husband had provided adequate support as required by N.C.G.S. § 50-13.6. *Id.* at 631. But we expressly clarified that "if there were adequate findings to support [the] [w]ife's entitlement to attorney[s'] fees on all three claims, the award would be proper." *Id.* at 627. Nowhere in *Hill* did we require findings that separated attorneys' fee amounts by individual claims, nor does Defendant cite to any other legal authority

in support of this purported requirement.[3] The trial court made all required statutory findings regarding the amount and reasonableness of Plaintiff's attorneys' fees, her insufficient means to cover them, and Defendant's inadequate provision of support. *See Leary*, 152 N.C. App. at 443. Thus, we hold that the trial court properly awarded attorneys' fees of $15,000 to Plaintiff.

## IV. Conclusion

For the reasons above, this Court affirms the trial court's order and remands it solely for further findings of fact that document reasons for the duration and method of payment for its alimony award.

AFFIRMED AND REMANDED.

Judges ARROWOOD and GORE concur.

Report per Rule 30(e).

---

[3] Defendant does, however, cite to an unpublished opinion of this Court as legal support for his argument without indicating its unpublished status as required by North Carolina Rule of Appellate Procedure 30. *See* N.C. R. App. P. 30(e)(3). We chastise Defendant and his counsel for this repeated violation of our appellate rules and disregard his argument to the extent it relies on our unpublished opinion in *Rissmann v. Rissmann*, 278 N.C. App. 605 (2021).